O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | Case No. **EDCV 12-00992 VAP** EDCR 08-00172 VAP |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER DENYING MOTION FOR RELIEF UNDER 28 U.S.C. SECTION 2255** |
| Vinod Chandrashekm Patwardhan, | ) ) ) | |
| Defendant. | ) ) ) | |

Defendant-Petitioner Vinod Chandrashekm Patwardhan ("Petitioner") filed this Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence ("Motion") on June 18, 2012.  (Doc. No. 254.[1])  On August 8, 2012, the Government filed its Opposition to the Motion ("Opposition").  (Doc. No. 258.)  Petitioner filed his

---

[1] Many of the documents appear on both the civil docket for this case, United States v. Patwardhan, No. ED-CV-12-00992-VAP (C.D. Cal. filed June 18, 2012), and on the docket for the underlying criminal case, United States v. Patwardhan, No. ED-CR-08-00172-VAP (C.D. Cal. filed Sept. 10, 2008).  Unless otherwise noted, all citations to docket numbers refer to the criminal case docket.

1  Reply[2] on September 12, 2012.[3]  (Civ. Doc. No. 9.)  For

2  the reasons set forth below, the Court DENIES the Motion.

3

4                        **I. BACKGROUND**

5      Following an eight-day jury trial from April 28, 2009

6  to May 8, 2009, Petitioner was convicted of the

7  following: (1)conspiracy to introduce misbranded drugs

8  into interstate commerce with intent to defraud or

9  mislead, in violation of 21 U.S.C. §§ 331(a), 333(a)(2),

10 352(c), and 352(f)(1); (2) fraudulently and knowingly

11 importing merchandise into the United States in violation

12 of 18 U.S.C. § 545; (3) stealing Medicare reimbursement

13 payments exceeding $1,000, in violation of 18 U.S.C. §

14 641; (4) defrauding the United States of and concerning

15 its governmental functions and rights, namely, to

16 interfere with or obstruct the lawful functions of the

17 FDA, HHS, and DHS by deceit, craft, trickery and

18 dishonest means; (5) introducing misbranded drugs into

19 _____

20      [2]   Petitioner's Reply brief exceeds the page limits
   set by the Court's Standing Order.  (See Standing Order
21 at 2-3 ("Memoranda of Points and Authorities in support
   of or in opposition to motions shall not exceed 25 pages.
22 Replies shall not exceed 12 pages.  Only in rare
   instances, and for good cause shown, will the Court agree
23 to extend these page limitations.") Petitioner's Reply
   brief is 25 pages long and Petitioner did not move for
24 leave to file a brief that exceeded the applicable page
   limits.
25
        [3]   On February 26, 2013, the Court provided the
26 Government leave to file a supplemental brief addressing
   three issues raised by Petitioner for the first time in
27 his Reply brief.  (See Civ. Doc. No. 10).  The Government
   filed its supplemental brief on March 27, 2013.  (See
28 Civ. Doc. No. 12.)

interstate commerce with the intent to defraud and mislead in violation of 21 U.S.C. §§ 331(a), 333(a)(2), 352(c), and 352(f)(1); (6) fraudulently and knowingly importing drugs purchased in India into the United States contrary to law in violation of 18 U.S.C. § 545; and (7) aiding and abetting the fraudulent and knowing importation of drugs purchased in Honduras into the United States contrary to law in violation of 18 U.S.C. § 545.  (See Doc. No. 164.)

On September 21, 2009, the Court imposed a sentence of probation for five years under terms and conditions, including nine months of home detention and 1,000 hours of community service, and a $10,000 fine.  (See Doc. Nos. 212, 213.)  After entering judgment against Petitioner on Counts Seven (criminal forfeiture) and Eight (civil forfeiture) of the second superseding indictment, the Court also ordered Petitioner to pay $1,313,634.10 in restitution/forfeiture.  (See Doc. Nos. 211, 213.)

Petitioner appealed his conviction.  (See Doc. No. 216.)  On March 18, 2011, the Ninth Circuit Court of Appeals affirmed the conviction, finding "overwhelming evidence" supported the jury's verdict.  United States v. Patwardhan, 422 Fed. Appx. 614, 617, 2011 WL 939244, at *2 (9th Cir. Mar. 18, 2011).

1    On November 28, 2012, the Court ordered early
2 termination of Petitioner's probation, "discharged
3 [Petitioner] from supervision," and terminated the case.
4 (Doc. No. 261)  For purposes of this Motion, Petitioner
5 was "in custody" at the time he filed this Motion, and
6 the Court retains jurisdiction to decide the Motion
7 despite Petitioner's subsequent release from custody.
8 See United States v. Spawr Optical Research, Inc., 864
9 F.2d 1467, 1470 (9th Cir. 1988) (district court's
10 jurisdiction over Section 2255 Motion measured at the
11 time of filing; if petitioner in custody at time of
12 filing, jurisdiction is satisfied); United States v.
13 Span, 75 F.3d 1383, 1386 n.5 (9th Cir. 1996) (petitioner
14 on probation meets the 'in custody' requirement for
15 Section 2255 jurisdiction).
16
17                    **II. LEGAL STANDARD**
18    Section 2255 permits federal prisoners to file
19 motions to vacate, set aside, or correct a sentence on
20 the ground that "the sentence was imposed in violation of
21 the Constitution or laws of the United States, or that
22 the court was without jurisdiction to impose such
23 sentence, or that the sentence was in excess of the
24 maximum authorized by law, or is otherwise subject to
25 collateral attack[.]"  28 U.S.C. § 2255.  The Supreme
26 Court has "repeatedly stressed the limits of a § 2255
27 motion . . . [and] cautioned that § 2255 may not be used
28

4

1  as a chance at a second appeal."  <u>United States v. Berry</u>,

2  624 F.3d 1031, 1038 (9th Cir. 2010) (citing <u>United States</u>

3  <u>v. Addonizio</u>, 442 U.S. 178, 184 (1979)).

4

5      Petitioner bears the burden of establishing any claim

6  asserted in his Section 2255 motion.  To warrant relief

7  because of constitutional error, Petitioner must show

8  that the error was one of constitutional magnitude which

9  had a substantial and injurious effect or influence on

10  the proceedings.  <u>See</u> <u>Hill v. United States</u>, 368 U.S.

11  424, 428 (1962).

12

13                    **III. DISCUSSION**[4]

14      Petitioner asserts one ground for Section 2255 relief

15  in his Motion, <u>i.e.</u>, his Sixth Amendment right to

16  effective assistance of counsel was violated by his

17  defense attorneys' conduct in the course of his trial

18  which, he argues, fell below an objective standard of

19  reasonableness.  (<u>See</u> Mot. ¶ 6.)

20

21  _____

22      [4]    In its analysis, the Court relies on cases
   applying the legal standard for ineffective assistance of
   counsel announced in <u>Strickland v. Washington</u>, 466 U.S.

23  668 (1984).  Some of the decisions the Court relies upon
   resolved habeas petitions brought under 28 U.S.C. § 2254

24  ("Section 2254"), as opposed to the statute under which
   Petitioner brought the instant action, <u>i.e.</u>, 28 U.S.C. §

25  2255 ("Section 2255"), which is a different standard
   against which the Court must review the petition.  The

26  Ninth Circuit has held, however, that rules governing
   ineffective assistance of counsel claims in Section 2255

27  cases are "nearly identical ... in substance" to the
   rules governing Section 2254 cases.  <u>United States v.</u>

28  <u>Buenrostro</u>, 638 F.3d 720, 722 (9th Cir. 2011).

1    As the U.S. Supreme Court has held, "the proper
2 standard for attorney performance is reasonably effective
3 assistance of counsel." Strickland v. Washington, 466
4 U.S. 668, 687 (1984).  To establish ineffective
5 assistance of counsel, Petitioner must prove (1)
6 "counsel's representation fell below an objective
7 standard of reasonableness," and (2) there is a
8 reasonable probability that, but for counsel's errors,
9 the result of the proceeding would have been different.
10 Id. at 688, 694.  "A reasonable probability is a
11 probability sufficient to undermine confidence in the
12 outcome." Id. at 694.  Under the second component,
13 Petitioner must demonstrate his attorney's errors
14 rendered the result unreliable or the proceedings
15 fundamentally unfair. Fretwell v. Lockhart, 506 U.S.
16 364, 372 (1993); Strickland, 466 U.S. at 694.
17
18    A claim of ineffective assistance of counsel requires
19 proof of both of these elements.  "[A] court need not
20 determine whether counsel's performance was deficient
21 before examining the prejudice suffered by the
22 defendant....  If it is easier to dispose of an
23 ineffectiveness claim on the ground of lack of sufficient
24 prejudice ... that course should be followed."
25 Strickland, 466 U.S. at 697.
26
27
28

1    The petitioner bears a heavy burden of proving that
2 counsel's assistance was neither reasonable nor the
3 result of sound trial strategy.  <u>Murtishaw v. Woodford</u>,
4 255 F.3d 926, 939 (9th Cir. 2001).  A habeas petitioner
5 must make a sufficient factual showing to substantiate
6 the claims.  <u>United States v. Schaflander</u>, 743 F.2d
7 714, 721 (9th Cir. 1984).  Conclusory allegations not
8 supported by specifics do not warrant relief.  <u>Jones v.</u>
9 <u>Gomez</u>, 66 F.3d 199, 205 (9th Cir. 1995).  The relevant
10 inquiry is not what counsel could have pursued but
11 whether the choices that were made were reasonable.
12 <u>Turner v. Calderon</u>, 281 F.3d 851, 877 (9th Cir. 2002).
13 The standard of review "must be highly deferential" and
14 must include "a strong presumption that counsel's conduct
15 falls within a wide range of reasonable professional
16 assistance."  <u>Strickland</u>, 466 U.S. at 689-90.

17

18    A petitioner must also show he suffered prejudice
19 under a test of a reasonable probability of a different
20 outcome.  <u>Strickland</u>, 466 U.S. at 687-94.  The prejudice
21 must be such that it "so undermined the proper
22 functioning of the adversarial process that the trial
23 cannot be relied on as having produced a just result."
24 <u>Id.</u> at 686.  If a petitioner fails to show this
25 prejudice, the reviewing court may reject the

26

27

28

claim of ineffective assistance of counsel without even reaching the issue of deficient performance.  <u>Id.</u> at 697; see <u>Williams v. Taylor</u>, 529 U.S. 362, 390 (2000).

**A.   Ineffective Assistance**

   Petitioner identifies six categories of purported failings by his counsel, with specific examples provided in each, to support his claim of ineffective assistance of counsel.  (Mot. ¶ 6.)  The Court addresses each of Petitioner's arguments in turn.

**1.   Irrelevant, prejudicial, and improper character evidence**

   Petitioner argues his counsel "failed to object and/or move to strike irrelevant unduly prejudicial and/or improper character evidence."  (<u>See</u> Mot. at ¶ 6.1.)

**a)   Testimony of Norma Franco, Melinda Funk, and Jessica Perez about failure to store drugs properly**

   Petitioner argues his counsel provided him with constitutionally defective assistance when he failed to object and move to strike testimony from Norma Franco, Melinda Funk, and Jessica Perez about the storage of imported drugs at Petitioner's office at room temperature.  (Mot. at ¶ 6.1; Reply at 4.)  Petitioner

also argues, in response to the United States' contention that defense counsel did object to testimony regarding the improper storage of imported medicine, that there were several points at which Franco, Funk, and Perez testified about the improper storage of imported drugs without defense counsel raising any objections. (Reply at 4.)

To his detriment, Petitioner offers no argument, factual analysis, or legal authority to demonstrate why or how the aforementioned testimony was irrelevant, unduly prejudicial, or improper character evidence, or, more importantly, how defense counsel's failure to object or move to strike this testimony fell below the "objective standard of reasonableness" "under prevailing professional norms." Strickland, 446 U.S. at 688; (see Reply at 4.) Petitioner only points out instances in Franco's, Funk's, and Perez's testimony where they referred to storage of the imported drugs to which defense counsel did not object. (Mot. at ¶ 6.1; Reply at 4.)

Petitioner offers nothing to support his argument but bald conclusions, which do not warrant habeas relief. Jones v. Gomez, 66 F.3d at 205. Accordingly, Petitioner does not meet his burden of substantiating his claim for ineffective assistance of counsel on this basis.

9

<u>Murtishaw v. Woodford</u>, 255 F.3d at 939; <u>United States v. Schaflander</u>, 743 F.2d at 721.

### b)  Testimony of Katherine Walton about her mother's death

Petitioner argues his counsel rendered ineffective assistance when he failed to object to or move to strike the testimony of Katherine Walton about her mother's death following treatment by Petitioner with the imported drugs.  (Mot. at ¶ 6.1; Reply at 5.)  Specifically, he argues this testimony led the jury to infer Walton's mother died because she had been treated with improperly stored imported medicine under Petitioner's care, which, he argues, was irrelevant and unduly prejudicial.  (Reply at 5.)

The Government called Jessica Perez as a witness immediately before Katherine Walton testified.  Perez previously worked as Petitioner's office administrator. (Reporter's Transcript ("RT") Apr. 30, 2009, Doc. No. 229 at 134-136.)  Perez testified, <u>inter</u> <u>alia</u>, that she witnessed drugs being kept in non-refrigerated conditions at Petitioner's office.  (<u>Id.</u> at 138-140, 150-153, 213-214.)

During a break in Perez's testimony and outside the presence of the jury, the Court raised, <u>sua</u> <u>sponte</u>, its

1  concern that testimony regarding the storage conditions
2  for the drugs at Petitioner's office appeared to be
3  irrelevant to any of the charged offenses and could
4  confuse or mislead the jury. (Id. at 171-181.)  The
5  parties argued their respective positions and the Court
6  ruled it would instruct the jury that refrigeration of
7  the chemotherapy medications was not at issue in the case
8  and that the jury should not consider any of the
9  testimony as evidence that any patients were harmed
10 because of the lack of refrigeration. (Id. at 171-181,
11 247-248.)

12

13     Following Perez's testimony, the Government called
14 Katherine Walton.  Walton testified that she cared for
15 her mother, Veronica Lin, who lived with her while she
16 received cancer treatment over the course of two and a
17 half years. (Id. at 219-220.)  Petitioner treated Lin's
18 uterine cancer from June 2005 until November 2007. (Id.
19 at 220.)  Lin died on December 24, 2007. (Id.)

20

21     Specifically, Walton testified: "I drove her to every
22 single solitary doctor's appointment, radiation, chemo, I
23 was with her through everything.  And I was her caretaker
24 in my home.  I mean, I prepared all her meals for her and
25 took care of her." (Id.)  She testified that she took
26 Lin to every appointment with Petitioner and spoke to
27 Petitioner regularly about her mother's care. (Id. at
28

220-222.)  On occasion, Walton had to inject her mother
with medicine at home; Petitioner's staff provided Walton
the medicine in syringes.  (Id. at 222-224.)  Walton
testified that, on one occasion, Petitioner's staff
provided her a syringe for her mother labeled with a name
she did not recognize; Walton asked Petitioner's nurse,
Norma Franco, about the medication and Franco told Walton
it was just like the drug that Walton had been
administering to her mother previously.  (Id. at 223-224,
232, 238-239.)

     At the end of the trial, the Court issued a limiting
instruction to the jury, as follows:

     Evidence has been presented during this trial about
     the manner in which the defendant transported
     imported drugs and the temperature of those drugs
     when they were transported to defendant's medical
     office.  Neither the condition or efficacy of these
     drugs, nor the manner in which they were transported,
     is an element of any of the crimes the defendant is
     charged with committing.  I hereby instruct you that
     you may consider evidence concerning the manner in
     which the drugs were transported, including their
     temperature, only to the extent that such evidence
     relates to whether the defendant possessed the
     necessary state of mind for each of the charged
     crimes.

1  (Court's Instruction No. 12, Doc. No. 162.)

2

3      First, Walton's testimony about her mother's death

4  was neither irrelevant nor unduly prejudicial.  The

5  testimony was relevant because it showed the extent of

6  the witness's involvement in and knowledge of her

7  mother's medical care by Petitioner.  See Fed. R. Evid.

8  401.  Walton's testimony was not unduly prejudicial

9  because her reference to her mother's death was not

10  pronounced; she mentioned it twice briefly at the outset

11  of her testimony and not again.  See Fed. R. Evid. 403;

12  (RT, Apr. 30, 2009 a.m., Doc. No. 229 at 219-232.)  She

13  did not testify about the impact of her mother's death.

14  (Id.)  Walton's testimony primarily concerned her

15  mother's medical treatment from Petitioner and, in

16  particular, the instance when she did not recognize the

17  name on one of the syringes she received from

18  Petitioner's staff.  (Id.)

19

20      In addition, at no point during the trial did the

21  Government argue expressly or by implication that

22  Petitioner was responsible for Walton's or anyone else's

23  death.  (See, e.g., RT May 7, 2009 a.m., Doc. No. 183 at

24  81-82.)  Finally, Walton's testimony was not unduly

25  prejudicial because it is reasonable for a doctor

26  treating cancer patients for over 30 years to have at

27  least a few patients under his care who died.

28

1    In any event, it was a reasonable tactical decision
2  of defense counsel not to object or move to strike
3  Walton's passing references to her mother's death.
4  Strickland, 466 U.S. at 689-90; Furman v. Wood, 190 F.3d
5  1002, 1006 (9th Cir. 1999) ("Counsel's tactical decisions
6  are virtually unchallengeable."); Guam v. Santos, 741
7  F.2d 1167, 1169 (9th Cir. 1984) (a tactical decision by
8  counsel that the defendant later disagrees with is not a
9  basis for an ineffective assistance of counsel claim).
10 Had defense counsel objected to Walton's reference to her
11 mother's death, it could have highlighted the fact for
12 the jury, so it was reasonable not to call the jury's
13 attention to the fact further.  See Werts v. Vaughn, 228
14 F.3d 178, 204-205 (3d Cir. 2000) (finding counsel did not
15 provide ineffective assistance when decision not to
16 object was counsel's tactic not to "highlight" or "draw
17 attention" to certain issues); Barnes v. Gonzales, 2012
18 WL 3930351, at *13 (C.D. Cal. Sept. 10, 2012) (finding no
19 ineffective assistance of counsel when attorney chose
20 "not to object to avoid highlighting an incriminating
21 fact"); see also Dunn v. United States, 307 F.2d 883, 886
22 (5th Cir. 1962) ("if you throw a skunk into the jury box,
23 you can't instruct the jury not to smell it.") (internal
24 quotation omitted).  Moreover, as stated supra, Walton's
25 reference to her mother's death was not unduly
26 prejudicial; accordingly, had defense counsel objected to
27 her testimony, the Court likely would have overruled the
28

1   objection.  See Juan H. v. Allen, 408 F.3d 1262, 1273
2   (9th Cir. 2005) (finding counsel did not render deficient
3   performance by failing to raise a meritless objection).
4
5        Even viewing Walton's reference to her mother's death
6   in light of Perez's testimony about the refrigeration of
7   the imported drugs and assuming, arguendo, Petitioner's
8   counsel was deficient in not objecting to this testimony,
9   the Court finds Petitioner has not met his burden of
10  proving he was prejudiced by his attorneys' deficiency.
11  As stated supra, the Court instructed the jury that the
12  condition or efficacy of the imported drugs was not at
13  issue, except to the extent the evidence reflected
14  Petitioner's criminal intent.  (See Court's Instruction
15  No. 12, Doc. No. 162.)  The Court presumes the jury
16  followed the instructions provided throughout the trial,
17  including the aforementioned limiting instruction.  See
18  Weeks v. Angelone, 528 U.S. 225, 234 (2000).  Petitioner
19  has not rebutted this presumption, as he has not argued,
20  let alone presented evidence to demonstrate, that the
21  jury disregarded any of the instructions provided by the
22  Court.  (See generally Mot.; Reply.)  Thus, in light of
23  the Court's jury instruction no. 12, the Court finds
24  Petitioner could not have suffered the prejudice he
25  argues, i.e., that the jury inferred that Lin died as a
26  result of being treated with incorrectly stored imported
27  drugs.  Strickland, 466 U.S. at 687-94.
28

1   Accordingly, Petitioner does not meet his burden of
2   substantiating his claim for ineffective assistance of
3   counsel on this basis.  <u>Murtishaw v. Woodford</u>, 255 F.3d
4   at 939; <u>United States v. Schaflander</u>, 743 F.2d at 721.

5

6          **c)   Testimony of Jessica Perez, Melinda Funk,**
7              **and Norma Franco regarding Petitioner's**
8              **conduct**

9          Petitioner argues his counsel provided him with
10  constitutionally defective assistance when he failed to
11  object and move to strike testimony from Jessica Perez,
12  Melinda Funk, and Norma Franco about their understanding
13  and belief that the importation of the drugs into the
14  United States and administration of those drugs to
15  Petitioner's patients was wrong and illegal.  (Mot. at ¶
16  6.1; Reply at 5-6.)  Petitioner argues, in response to
17  the Government's contention that defense counsel did
18  object to this testimony, that there were several points
19  at which Perez, Funk, and Franco testified about their
20  beliefs that the importation of, and treatment of
21  patients with, the drugs was illegal, and defense counsel
22  failed to object.  (Reply at 5-6.)

23

24         Petitioner offers no argument, factual analysis, or
25  legal authority to demonstrate why or how the
26  aforementioned testimony was irrelevant, unduly
27  prejudicial, or improper character evidence, or, more
28

importantly, how defense counsel's failure to object to or move to strike this testimony fell below the "objective standard of reasonableness" "under prevailing professional norms."  <u>Strickland</u>, 446 U.S. at 688; (<u>see</u> Reply at 5-6.)  Petitioner only points out instances in Perez's, Funk's, and Franco's testimony where they stated their beliefs as to the legality or illegality of the conduct at issue, to which defense counsel did not object.  (Mot. at ¶ 6.1; Reply at 5-6.)  Petitioner offers nothing to support his argument but bald conclusions, which do not warrant habeas relief.  <u>Jones v. Gomez</u>, 66 F.3d at 205.

In the first place, Petitioner's claim on this basis is, in large part, belied by the record.  The relevant portions of the testimony of Funk, a nurse practitioner who worked in Petitioner's office, concerned only her professional training as a nurse practitioner; she did not testify about her belief regarding Petitioner's conduct.  (<u>See</u> RT Apr. 30, 2009, Doc. No. 229, at 102-104; Mot. at 6.1.3 (limiting claim to Funk's testimony found on pages 102 through 104).)  Likewise, Perez's testimony concerned her reasons for her decision to stop working for Petitioner; she did not express a belief that Petitioner's conduct was illegal.  (<u>See</u> RT Apr. 30, 2009, Doc. No. 229 at 111-112; Mot. at 6.1.3 (limiting claim to Perez's testimony found on pages 111 and 112).)

Franco, another nurse practitioner who worked in Petitioner's office, testified about her discussions with co-workers regarding their concerns about Petitioner's use of imported drugs.  (See RT Apr. 30, 2009, Doc. No. 229 at 13-14; Mot. at 6.1.3 (limiting claim to Franco's testimony found on pages 13 and 14).)  Franco testified that Perez told her that bringing the drugs into the United States was "wrong and that it was illegal to bring those medications."  (RT Apr. 30, 2009, Doc. No. 229 at 14.)  She went on to say that Perez's statement to her was "how [she] knew that Dr. Patwardhan was doing something wrong."  (Id.)  Contrary to Petitioner's argument, Franco did not specifically express an opinion that Petitioner's conduct was illegal.  (Id.)  Moreover, Petitioner does not show how Franco's brief testimony on this subject "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Id. at 686.  Instead, Petitioner offers only conclusory arguments.  Jones v. Gomez, 66 F.3d at 205; (see Mot. at 6.1.3; Reply at 5-6.).

Accordingly, Petitioner does not meet his burden of substantiating his claim for ineffective assistance of counsel on this basis.  Murtishaw v. Woodford, 255 F.3d at 939; United States v. Schaflander, 743 F.2d at 721.

1          **d)**   **Testimony of Melinda Funk and Charlene**

2               **Craven about Petitioner's character for**

3               **greediness**

4     Petitioner argues his defense counsel provided

5 ineffective assistance of counsel when he failed to

6 object to irrelevant and unfairly prejudicial character

7 evidence about Petitioner's purported greed that was

8 introduced through the testimony of Melinda Funk and

9 Charlene Craven.  (Mot. at ¶ 6.1; Reply at 6-7.)

10 Petitioner contends his attorney should have objected to

11 Funk's testimony regarding Petitioner's instruction to

12 have patients use a treadmill in Petitioner's office and

13 Craven's testimony discussing the practice in

14 Petitioner's office of seeking reimbursement from

15 Medicare for procedures and treatment that exceeded the

16 allowable charges set by Medicare.  (Reply at 6-7

17 ("Funk's testimony implied that Patwardhan improperly

18 ordered use of the office treadmill to increase his

19 profit, yet there was no evidence that Patwardhan was

20 motivated by anything other than his patients['] proper

21 medical treatment.  Similarly Craven's testimony implied

22 that Patwardhan himself requested reimbursement from

23 Medicare for more than the allowable amount.").)

24

25         **1.  Funk's testimony**

26     Funk testified at trial that there was a treadmill in

27 Petitioner's office that was not being used and

28

Petitioner told Funk to begin using the treadmill for
patients "[b]ecause it was bought and it needed to be
utilized."  (RT Apr. 30, 2009, Doc. No. 229 at 109-111.)
Government counsel asked Funk how much money the office
would charge for patients' use of the treadmill, to which
Funk responded that she did not know.  (Id. at 111.)  The
prosecutor then asked Funk her understanding as to why
tests needed to be done on the treadmill at the office as
opposed to another location, to which defense counsel
objected; the Court sustained the objections.  (Id.)
Funk did not testify further on the topic of the
treadmill.  (Id.)

     Petitioner's claim that his attorney rendered
ineffective assistance on this basis is fails.  Funk's
testimony on this topic was limited to the reason for the
placement of the treadmill in the office and its use.
(Id.)  As soon as the prosecutor began questioning Funk
further about the treadmill, defense counsel objected,
the Court sustained the objection, and counsel for the
Government moved on to a different area of questioning.
(Id.)  Petitioner does not show that Funk's testimony on
this topic cast a negative light on his character.  More
importantly, Petitioner does not demonstrate how defense
counsel, who succeeded in stopping Funk from testifying
further on the topic and forced the Government to move on
to a different area of questioning, provided assistance

1  that fell below the "objective standard of
2  reasonableness" "under prevailing professional norms."
3  <u>Strickland</u>, 446 U.S. at 688.

4

5     Moreover, Petitioner does not show how Funk's brief
6  testimony about the treadmill unduly prejudiced him such
7  that it "so undermined the proper functioning of the
8  adversarial process that the trial cannot be relied on as
9  having produced a just result."  <u>Id.</u> at 686.
10  Petitioner's argument in this regard is conclusory and
11  without factual and legal authority.  <u>Jones v. Gomez</u>, 66
12  F.3d at 205.

13

14            **2.  Craven's testimony**

15     Craven, a medical reviewer for a contracting company
16  that processed Medicare claims, testified at trial about
17  the procedure to bill for reimbursement for medical care
18  from Medicare.  (RT May 5, 2009 a.m., Doc. No. 230 at 11-
19  27.)  In addition, Craven testified she had reviewed
20  Petitioner's submissions for Medicare reimbursement from
21  2006 to 2008 and concluded that the amount Petitioner
22  billed to Medicare typically exceeded the amount allowed
23  by Medicare's fee schedule.  (<u>Id.</u> at 16-17.)  Defense
24  counsel cross-examined Craven and asked her whether or
25  not doctors billing more than the allowed amount to
26  Medicare was common, to which she replied it was common
27  and explained there was no rule against billing for more
28

1    than the allowable amount because Medicare limits

2    reimbursement according to a fee schedule that sets the

3    allowable amount.  (Id. at 23.)

4

5        As with Funk's testimony, Petitioner's claim that his

6    attorney rendered ineffective assistance based on

7    Craven's testimony is unavailing.  Defense counsel cured

8    any purported prejudice to Petitioner by following up

9    with Craven on cross-examination and having her explain

10   to the jury that it is a common practice of doctors to

11   submit requests for reimbursement to Medicare that far

12   exceed the Medicare allowable amount, set by fee

13   schedule.  It was defense counsel's reasonable tactical

14   decision to present the issue to the jury in such a way,

15   instead of objecting to Craven's testimony on direct

16   examination.  See Furman v. Wood, 190 F.3d at 1006; Guam

17   v. Santos, 741 F.2d at 1169; see also Alcaraz v.

18   Giurbino, 2010 WL 3582938, at *15-16 (E.D. Cal. Sept. 9,

19   2010) (finding counsel's decision not to object to

20   unfavorable testimony on direct examination but instead

21   inquire further with the witness on cross-examination was

22   a reasonable tactical decision not constituting deficient

23   performance); cf. Griffin v. Harrington, 2012 WL 5464609,

24   at * 17-18 (C.D. Cal. Nov. 7, 2012 ("even if petitioner's

25   counsel had made a deliberate, tactical decision to waive

26   his objection to [a witness' unsworn] testimony and

27   instead focus solely on his cross-examination of [the

28

1  witness], that tactical choice would have fallen below an
2  objective standard for reasonable representation of
3  petitioner" because had counsel objected to the witness
4  providing unsworn testimony, counsel could have convinced
5  the court to exclude the witness from testifying and the
6  witness would not have provided hurtful testimony to the
7  defense.)  Petitioner has not shown how defense counsel's
8  conduct fell below the "objective standard of
9  reasonableness" "under prevailing professional norms."
10 Strickland, 446 U.S. at 688.

11

12     Moreover, Petitioner does not show how Craven's
13 testimony about Petitioner's Medicare reimbursement
14 practices unduly prejudiced him such that it "so
15 undermined the proper functioning of the adversarial
16 process that the trial cannot be relied on as having
17 produced a just result." Id. at 686.  Petitioner's
18 argument in this regard is conclusory and without factual
19 and legal authority.  Jones v. Gomez, 66 F.3d at 205.

20

21     Accordingly, Petitioner has not met his burden of
22 substantiating his claim for ineffective assistance of
23 counsel on this basis and he is not entitled to habeas
24 relief.  Murtishaw v. Woodford, 255 F.3d at 939; United
25 States v. Schaflander, 743 F.2d at 721.

26

27

28

1              **e)    Testimony of Velma Yep and Jessica Young**
2                     **about their guilty pleas and admission of**
3                     **their charging documents and plea agreements**
4         Petitioner argues his trial counsel was
5    constitutionally ineffective because he questioned Velma
6    Yep and Jessica Young about their guilty pleas and moved
7    to admit the plea agreements and charging documents into
8    evidence, which Petitioner now claims was inculpatory
9    evidence.  (<u>See</u> Mot. at ¶ 6.1; Reply at 7-9.)   In
10   particular, Petitioner argues, "[t]his evidence was
11   irrelevant and unfairly prejudicial as it improperly
12   suggested that their guilty pleas provided evidence of
13   Yep and Young's culpability for the conspiracy with which
14   Patwardhan was charged and the unlawful importation of
15   cancer-treatment medicine by Young which Patwardhan was
16   alleged to have aided and abetted, notwithstanding that
17   Yep and Young were not charged with and did not plead
18   guilty to these charges."  (Reply at 8.)
19
20        Yep, a nurse practitioner who worked for Petitioner,
21   and Young, Petitioner's office manager, each testified
22   that they pled guilty to a misdemeanor, not involving a
23   crime with an element of intent to defraud.  (<u>See</u> RT May
24   1, 2009 a.m., Doc. No. 225 at 78-79, 82-83; RT May 1,
25   2009 p.m., Doc No. 156, at 6-9, 12-19; RT May 6, 2009,
26   Doc. No. 231 at 90-91.)  During cross-examination,
27   defense counsel asked, and Yep and Young testified, about
28

their obligation, pursuant to their plea agreements, to cooperate with the Government.  (See RT May 1, 2009 p.m., Doc. No. 156, at 7-9, 12-19; RT May 6, 2009, Doc. No. 231 at 47.)  Young also testified that she met with the Government attorneys several times over the course of the case, including trial preparation.  (RT May 6, 2009, Doc. No. 231 at 29.)

Petitioner does not explain, let alone support with factual or legal authority, how this conduct constituted constitutionally ineffective assistance of counsel. Defense counsel questioned both witnesses about their motivations for testifying, which the jury could have concluded might call their credibility into question; defense counsel's effort to impeach these witnesses with their plea agreements was entirely reasonable.  See Davis v. Alaska, 415 U.S. 308, 316 (1974) ("the cross-examiner has traditionally been allowed to impeach, i.e., discredit the witness.  One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness.  By doing so the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony.  The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness."); see also Fed. R. Evid. 607

25

("Any party, including the party that called the witness, may attack the witness's credibility."). Petitioner does not show how his attorney's performance fell below the "objective standard of reasonableness" "under prevailing professional norms." Strickland, 446 U.S. at 688.

Finally, Petitioner does not show how this evidence unduly prejudiced him such that it "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 446 U.S. at 686. Instead, Petitioner's arguments are conclusory and do not warrant habeas relief. Jones v. Gomez, 66 F.3d at 205.

Accordingly, Petitioner has not met his burden of substantiating his claim for ineffective assistance of counsel on this basis and he is not entitled to habeas relief. Murtishaw v. Woodford, 255 F.3d at 939; United States v. Schaflander, 743 F.2d at 721.

**2.   Hearsay evidence**

Petitioner argues his counsel "failed to object and/or move to strike hearsay evidence which also violated [Petitioner's] Sixth Amendment right to confrontation." (See Mot. at ¶ 6.2.)

1              **a)    Testimony of Melissa Armijo about Customs**

2                   **officer's search for declarations forms**

3        Petitioner argues his counsel rendered

4   constitutionally deficient assistance when he failed to

5   object to or move to strike Melissa Armijo's[5] testimony

6   regarding the search for customs records by a non-

7   testifying customs officer.  (Mot. at ¶ 6.2; Reply at 9.)

8   According to Petitioner, because Armijo testified that

9   Customs only found one customs declaration submitted by

10  Petitioner after searching the agency's records:

11       "the jury was left to infer that Patwardhan did not

12       declare anything in his Customs declarations when he

13       brought imported medicine into the Government because

14       such declarations otherwise would have been

15       maintained by Customs and been admitted into

16       evidence.  Given that Armijo never actually conducted

17       a search for Patwardhan's Customs declaration [],

18       such an inference was improper."

19  (Reply at 9 (internal citation omitted).)

20

21       At trial, Armijo testified that she was involved in

22  searching for the declarations, but that she "had

23  somebody else search for them" physically and report

24  their findings back to her.  (See RT May 5, 2009 a.m.,

25  Doc. No. 230 at 79.)  After the Customs agent conducted

26  ─────────────────

27       [5]    Armijo was the Chief Customs and Border
    Protection Officer at the Los Angeles International
28  Airport.

27

the search, one declaration form was found that could be attributed to Petitioner, reflecting his purchase of a silver cup in London in 2008.  (Id. at 99.)

Petitioner offers no authority for his contention that Armijo's testimony caused the jury to make an improper inference, nor any authority that his counsel's decision not to object or move to strike that testimony constituted ineffective assistance.  Strickland, 446 U.S. at 688.  Contrary to Petitioner's position, defense counsel made a reasonable tactical decision to argue at multiple points during trial that the jury should make an inference from this evidence that was favorable to Petitioner, i.e., that the failure of Customs to find Petitioner's Customs declarations forms, save one, should be attributed to Customs having lost or thrown away the forms.  (See, e.g., RT Apr. 29, 2009, Doc. No. 224, at 33-34; RT May 7, 2009 p.m., Doc. No. 232 at 18-23); Strickland, 466 U.S. at 689-90; Furman v. Wood, 190 F.3d at 1006; Guam v. Santos, 741 F.2d at 1169.  Defense counsel's argument on this point was consistent with the defense that Petitioner did not know he was engaging in illegal conduct when he imported the medicine, as he consented to searches by Customs agents every time he entered the United States and did not try to hide anything from Customs agents, including on the occasions he carried imported drugs in his luggage.  Petitioner's

argument that his counsel rendered deficient performance
on this basis is conclusory, unsupported by the record,
and does not warrant habeas relief.  <u>Jones v. Gomez</u>, 66
F.3d at 205.

In addition, Petitioner does not show how this
testimony unduly prejudiced him such that it "so
undermined the proper functioning of the adversarial
process that the trial cannot be relied on as having
produced a just result."  <u>Strickland</u>, 466 U.S. at 686.
The fact that Customs agents searched for declarations
filled out by Petitioner and found only one was not
disputed at trial.  <u>See</u> <u>Flournoy v. Small</u>, 681 F.3d 1000,
1006 (9th Cir. 2012) (finding defense counsel's failure
to object to evidence that was undisputed at trial did
not satisfy the petitioner's burden to prove prejudice
under <u>Strickland</u> because the petitioner failed to show
how the exclusion of the evidence reasonably could have
resulted in a different outcome of the trial).  Defense
counsel offered the jury a reasonable explanation of the
state of this evidence and he suggested that the jury
make an inference from the evidence in Petitioner's
favor.  (<u>See</u> RT Apr. 29, 2009, Doc. No. 224, at 33-34; RT
May 7, 2009 p.m., Doc. No. 232 at 18-23.)  Especially in
light of defense counsel's arguments to the jury,
Petitioner fails to demonstrate how the admission of
evidence regarding an undisputed fact changed the outcome

1  of his trial.  <u>Strickland</u>, 466 U.S. at 686; <u>Flournoy</u>, 681
2  F.3d at 1006.

3

4      Accordingly, Petitioner has failed to meet his burden
5  of substantiating his claim for ineffective assistance of
6  counsel on this basis and he is not entitled to habeas
7  relief.  <u>Murtishaw v. Woodford</u>, 255 F.3d at 939; <u>United</u>
8  <u>States v. Schaflander</u>, 743 F.2d at 721.

9

10         **b)  Jessica Young's notes**
11      Petitioner argues his counsel rendered ineffective
12  assistance when he failed to object to the admission into
13  evidence of Jessica Young's notes reflecting the prices
14  of the imported drugs and their domestic counterparts.
15  (Mot. at ¶ 6.2; Reply at 9-10.)  Petitioner argues the
16  notes were "particularly probative as to Dr. Patwardhan's
17  motive" yet contends they "were irrelevant to
18  Patwardhan's state of mind as there was no evidence that
19  he ever reviewed the notes."  (Reply at 9-10.)

20

21      This ground lacks merit and is belied by the record.
22  At trial, defense counsel lodged objections to the
23  evidence, <u>i.e.</u>, Exhibits 75-77, 79 and 82, to which
24  Petitioner now claims his counsel did not object, and
25  these exhibits were not admitted into evidence nor were
26  they published to the jury.  (<u>See</u> RT May 5, 2009 p.m.,
27  Doc. No. 182 at 25 (defense counsel lodged objection to
28

1  the Government' Exhibits 75-77, 79, 82); List of Exhibits

2  and Witnesses, Doc. No. 163 at 18 (reflecting the

3  Government' Exhibits 75-77, 79, and 82 were never

4  admitted into evidence; Mot. at 6.2.2[6] (limiting basis or

5  ineffective assistance of counsel claim to the entry of

6  United States' Exhibits 75-77, 79, and 82).)

7

8      Accordingly, Petitioner has not met his burden of

9  substantiating his claim for ineffective assistance of

10 counsel on this basis and he is not entitled to habeas

11 relief.  Murtishaw v. Woodford, 255 F.3d at 939; United

12 States v. Schaflander, 743 F.2d at 721.

13

14     **3.   Inculpatory evidence**

15     Petitioner argues his counsel "introduced inculpatory

16 evidence," citing four examples, and that by doing so his

17 attorney rendered ineffective assistance of counsel.

18 (See Mot. at ¶ 6.3; Reply at 10-12.)  Specifically,

19 Petitioner claims his attorney violated his

20 constitutional right to effective assistance of counsel

21 when he questioned, or did not object to certain

22 testimony of, Melinda Funk, Velma Yep, Jessica Young, and

23

24     [6]   To the extent Petitioner sought to argue his
   claim for ineffective assistance applied to the admission
25 of all of Young's notes into evidence and her testimony
   regarding those documents and did not intend to limit his
26 claim to the Government' Exhibits 75-77, 79, and 82,
   Petitioner did not make such a claim in his Motion.  (See
27 Mot. at 6.2.2.)  The Court considers and addresses only
   those claims properly raised in Petitioner's Section 2255
28 Motion.

31

1   Dr. Noam Drazin, as well as to the admission into
2   evidence of Yep and Young's criminal records, and his
3   counsel's entry into a stipulation as to Petitioner's
4   Medicare billing.  (Id.)

5

6       Petitioner's argument is foreclosed by the Ninth
7   Circuit's decision in Xiong v. Felker, 681 F.3d 1067 (9th
8   Cir. 2012).  In Xiong, the Ninth Circuit found when
9   defense counsel takes "a calculated risk in an attempt to
10  elicit testimony that he was ultimately unable to elicit"
11  and instead elicits unfavorable testimony, "this is not
12  enough to demonstrate the requisite incompetence, nor
13  prejudice" required by Strickland v. Washington, 466 U.S.
14  668 (1984).  Xiong, 681 F.3d at 1078-1079.  Assuming,
15  arguendo, Petitioner is correct that his attorney
16  elicited unfavorable testimony during cross-examination,
17  "this is not enough" to demonstrate his attorney rendered
18  ineffective assistance.  Id.

19

20      Moreover, Petitioner does not show how this purported
21  inculpatory evidence unduly prejudiced him such that it
22  "so undermined the proper functioning of the adversarial
23  process that the trial cannot be relied on as having
24  produced a just result."  Strickland, 466 U.S. at 686.

25

26      Accordingly, Petitioner does not meet his burden of
27  substantiating his claim for ineffective assistance of

28

1 counsel on this basis and he is not entitled to habeas

2 relief.  Murtishaw v. Woodford, 255 F.3d at 939; United

3 States v. Schaflander, 743 F.2d at 721.

4

5     **4.   Exculpatory evidence**

6     Petitioner argues his counsel "failed to adequately

7 investigate and/or present exculpatory evidence." (See

8 Mot. at ¶ 6.4; see also Reply at 12-15.)  Specifically,

9 he argues his counsel: (1) failed to develop the

10 testimony of Young and Yep that each lacked criminal

11 intent and each did not tell Petitioner about their means

12 of importing drugs; (2) failed to develop the testimony

13 of Young that Petitioner did not participate in his

14 office's Medicare billing; and (3) failed to elicit

15 testimony that the active ingredients in the imported

16 drugs were the same as those found in the FDA-approved

17 medications.  (Reply at 12-15.)

18

19     "Th[e] [Ninth Circuit] [] has repeatedly held that

20 "[a] lawyer who fails adequately to investigate and

21 introduce ... [evidence] that demonstrate[s] his client's

22 factual innocence, or that raise[s] sufficient doubt as

23 to that question to undermine confidence in the verdict,

24 renders deficient performance." Hart v. Gomez, 174 F.3d

25 1067, 1070 (9th Cir. 1999) (counsel's failure to review

26 key documents corroborating defense witness's testimony

27 constituted deficient performance); see also Avila v.

28

1  <u>Galaza</u>, 297 F.3d 911, 919 (9th Cir. 2002) (counsel's
2  failure to investigate evidence that defendant's brother
3  was the shooter constituted deficient performance); <u>Lord</u>
4  <u>v. Wood</u>, 184 F.3d 1083, 1095-96 (9th Cir. 1999)
5  (counsel's failure to call key witnesses whose testimony
6  undermined the prosecutor's case constituted deficient
7  performance); <u>Sanders v. Ratelle</u>, 21 F.3d 1446, 1457 (9th
8  Cir. 1994) (counsel's failure to investigate evidence
9  that someone else was the killer constituted deficient
10  performance); <u>see</u> <u>also</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 59
11  (1985) (failure to investigate a meritorious defense may
12  constitute ineffective assistance of counsel).  "The
13  failure to investigate is especially egregious when a
14  defense attorney fails to consider potentially
15  exculpatory evidence." <u>Rios v. Rocha</u>, 299 F.3d 796, 805
16  (9th Cir. 2002); <u>see</u> <u>also</u> <u>Harris v. Wood</u>, 64 F.3d 1432,
17  1435-37 (9th Cir. 1995) (holding that counsel's failure
18  to retain an investigator and interview many of the
19  individuals identified in the police reports was
20  deficient performance).
21
22    "There comes a point where a defense attorney will
23  reasonably decide that another strategy is in order, thus
24  mak[ing] particular investigations unnecessary." <u>Cullen</u>
25  <u>v. Pinholster</u>, 563 U.S. __, 131 S. Ct. 1388, 1408 (2011)
26  (citations and internal quotations omitted) (alteration
27  in original).  "Those decisions are due 'a heavy measure
28

1  of deference.'" <u>Id.</u>; <u>see also</u> <u>Leavitt v. Arave</u>, 646 F.3d
2  605, 608 (9th Cir. 2011) ("Judicial scrutiny of counsel's
3  performance is highly deferential.").  "[S]trategic
4  choices made after a thorough investigation of law and
5  facts relevant to plausible options are virtually
6  unchallengable." <u>Leavitt</u>, 646 F.3d at 608 (quoting
7  <u>Strickland</u>, 466 U.S. at 690).  Hence, to prove an
8  attorney's deficient performance, a petitioner must
9  demonstrate that the attorney "made errors that a
10 reasonably competent attorney acting as a diligent and
11 conscientious advocate would not have made." <u>Butcher v.</u>
12 <u>Marquez</u>, 758 F.2d 373, 376 (9th Cir. 1985).

13

14    Petitioner fails to submit admissible evidence
15 demonstrating what Young and Yep would have said had they
16 been asked the questions Petitioner now argues his
17 counsel should have asked them.  He also fails to submit
18 what evidence or testimony defense counsel would have
19 discovered had he conducted an appropriate investigation.
20 <u>See</u>, <u>e.g.</u>, <u>Bean v. Calderon</u>, 163 F.3d 1073, 1082 (9th
21 Cir. 1998) ("[petitioner] offers no concrete support for
22 his speculation" regarding his ineffective assistance
23 claim); <u>United States v. Ashimi</u>, 932 F.2d 643, 650 (7th
24 Cir. 1991) ("self-serving speculation will not sustain an
25 ineffective assistance claim.")  Without admissible
26 evidence, Petitioner's claim is based on mere speculation
27 and is conclusory.  <u>Jones v. Gomez</u>, 66 F.3d at 205.

28

1    Moreover, without admissible evidence regarding what
2  Young and Yep would have said or what evidence would have
3  been adduced had defense counsel properly investigated
4  the case, Petitioner cannot demonstrate his counsel "made
5  errors that a reasonably competent attorney acting as a
6  diligent and conscientious advocate would not have made."
7  Butcher v. Marquez, 758 F.2d at 376; see also Strickland,
8  466 U.S. at 691; cf. Cannedy v. Adams, 706 F.3d 1148,
9  1162-63 (9th Cir. 2013) (finding counsel rendered
10  deficient performance because "[n]o competent lawyer
11  would have declined to interview such a potentially
12  favorable [exculpatory] witness when that witness had
13  been clearly identified [by the defendant to his
14  attorney], the witness was easily accessible and willing
15  to provide information, and trial counsel faced a dearth
16  of defense witnesses."). Nor can he demonstrate that his
17  counsel's purported failure in this regard prejudiced him
18  such that it "so undermined the proper functioning of the
19  adversarial process that the trial cannot be relied on as
20  having produced a just result." Strickland, 466 U.S. at
21  686.

22

23    Accordingly, Petitioner has not met his burden of
24  substantiating his claim for ineffective assistance of
25  counsel on this basis and he is not entitled to habeas
26  relief. Murtishaw v. Woodford, 255 F.3d at 939; United
27  States v. Schaflander, 743 F.2d at 721.

28

**5.   Theories of defense argued to the jury**

Petitioner argues his counsel "failed to argue viable
theories of defense to the jury in closing argument,"
<u>i.e.</u>, the lack of criminal intent of Petitioner's co-
conspirators and Petitioner's lack of criminal intent.
(<u>See</u> Mot. at ¶ 6.5; <u>see</u> <u>also</u> Reply at 15-17.)

In fact, Petitioner's counsel argued both points to
the jury during his closing argument.  Hence, this claim
is meritless.

First, Petitioner's counsel argued repeatedly at
trial that Petitioner lacked the requisite criminal
intent for the charged offenses because Petitioner did
not believe he was engaging in illegal conduct.  (<u>See</u>,
<u>e.g.</u>, RT Apr. 29, 2009, Doc. No. 224 at 21 ("This case
comes down to one thing.  It comes down to the question
of whether Dr. Patwardhan knew that there was a problem
with bringing these medicines into the country.... But
the issue is whether [Dr. Patwardhan] acted with the
intent to defraud or deceive anyone."); RT May 7, 2009
p.m., Doc. No. 232 at 9 ("if you look at Dr. Patwardhan's
actions, you will see that he did not act like a person
who knows that the thing he is holding is evidence of a
crime."), 27 ("Can one conclude beyond a reasonable doubt
that a person who acted this way knows that what he is
doing is illegal?"), 38 ("the evidence shows that Customs

37

allowed Dr. Patwardhan to bring the medicine into the country.  He believed he was allowed to bring them in. His actions speak louder than words about what he believed between 2002 and 2008.  He would have no reason to conceal or lie about something that he thought was legal, which leads to the conclusion, that because it cannot be said beyond a reasonable doubt that Dr. Patwardhan acted with intent to defraud or acted with the knowledge that he was breaking the law or stealing from Medicare, the only just verdict in this case is not guilty.").)  Petitioner's conclusion that his attorney failed to argue this point to the jury during closing argument is belied by the record.  (See RT May 7, 2009 p.m., Doc. No. 232 at 9, 27, 38.)

Likewise, Petitioner's counsel argued to the jury that Young and Yep thought their conduct was legal and "never admitted to trying to fool anyone about anything" despite their entering into guilty pleas.  (See RT May 7, 2009 p.m., Doc. No. 232 at 33-34, 36.)  Petitioner's contention that his counsel failed to argue that Petitioner's unindicted co-conspirators lacked criminal intent during closing argument lacks merit.

Accordingly, Petitioner has not met his burden of substantiating his claim for ineffective assistance of counsel on this basis and he is not entitled to habeas

relief.   Murtishaw v. Woodford, 255 F.3d at 939; United States v. Schaflander, 743 F.2d at 721.

### 6.   Cumulative errors

Petitioner argues his counsel "committed cumulative errors."   (See Mot. at ¶ 6.6.)

As discussed, supra, the Court has rejected each of Petitioner's claims of error by defense counsel as either belied by the record, unsubstantiated, or not error in the first instance.

Accordingly, the Court finds Petitioner has failed to demonstrate he was prejudiced by the purported cumulative errors.   Murtishaw v. Woodford, 255 F.3d at 939; United States v. Schaflander, 743 F.2d at 721.   Moreover, his claim that he is entitled to habeas relief due to his counsel's cumulative errors is entirely conclusory and devoid of evidentiary support.   Jones v. Gomez, 66 F.3d at 205.

### B.   Request for Leave to Conduct Discovery, Submit Expert Witness Affidavit, and for Evidentiary Hearing

In Petitioner's Reply brief, he asks the Court for leave to:

> "supplement the record with an affidavit from an
> expert witness concerning the prevailing professional

1    norms against which trial counsel's performance must

2    be measured, allow Patwardhan to conduct discovery

3    relating to the claim that trial counsel's failure to

4    investigate and present exculpatory evidence was

5    constitutionally ineffective, and set the matter for

6    an evidentiary hearing to resolve the disputed issues

7    of fact."

8  (Reply at 2.)

9

10    In habeas cases, "[p]retrial discovery may be

11  employed in the course of a § 2255 hearing to the extent

12  that the trial judge, in the sound exercise of his

13  discretion, permits."  Argo v. United States, 473 F.2d

14  1315, 1317 (9th Cir. 1973).  In exercising that

15  discretion, habeas courts are cautioned that they "should

16  not allow prisoners to use federal discovery for fishing

17  expeditions to investigate mere speculation."  Calderon

18  v. U.S. Dist. Court for the Northern Dist. of Cal., 98

19  F.3d 1102, 1106 (9th Cir. 1996).  "A habeas petitioner,

20  unlike the usual civil litigant in federal court, is not

21  entitled to discovery as a matter of ordinary course."

22  Bracy v. Bramley, 520 U.S. 899, 904 (1997).  "But where

23  specific allegations before the court show reason to

24  believe that the petitioner may, if the facts are fully

25  developed, be able to demonstrate that he is confined

26  illegally and is therefore entitled to relief, it is the

27  duty of the court to provide the necessary facilities and

28

40

1  procedures for an adequate inquiry." <u>Harris v. Nelson</u>,

2  394 U.S. 286, 300 (1969).

3

4       "To earn the right to a[n] [evidentiary] hearing ...

5  [a 2255 movant must] allege specific facts which, if

6  true, would entitle him to relief." <u>United States v.</u>

7  <u>McMullen</u>, 98 F.3d 1155, 1159 (9th Cir. 1996).  The Ninth

8  Circuit has recognized that even when credibility is at

9  issue, no evidentiary hearing is required if it can be

10  "'conclusively decided on the basis of documentary

11  testimony and evidence in the record.'"  <u>Shah v. United</u>

12  <u>States</u>, 878 F.2d 1156, 1159 (9th Cir. 1989) (quoting

13  <u>United States v. Espinoza</u>, 866 F.2d 1067, 1069 (9th Cir.

14  1989)).  The court may deny a hearing if the movant's

15  allegations, viewed against the record, fail to state a

16  claim for relief or "are so palpably incredible or

17  patently frivolous as to warrant summary dismissal."

18  <u>United States v. Mejia-Mesa</u>, 153 F.3d 925, 931 (9th Cir.

19  1998).

20

21       The Court finds Petitioner fails to show good cause

22  for discovery.  He simply states in his Reply that "[i]n

23  addition to requesting leave to expand the record by

24  submitting an affidavit from an expert witness regarding

25  the 'prevailing professional norms' by which trial

26  counsel's conduct should be measured, Patwardhan requests

27  leave to conduct discovery as to whether trial counsel

28

1  conducted a reasonable investigation."[7]  (Reply at 13.)

2  Petitioner does not explain the basis for his request for

3  discovery, let alone what discovery he seeks to propound

4  or from what sources.  Likewise, he does not explain why

5  he should be entitled to discovery at this point in the

6  litigation, _i.e._, after the parties have briefed the

7  Section 2255 Motion fully.  Petitioner's request for

8  discovery is supported by nothing but speculation and

9  appears to be an attempt to engage in an impermissible

10 "fishing expedition."  _Calderon_, 98 F.3d at 1106.

11

12     Likewise, the Court denies Petitioner's request for

13 leave to submit an affidavit from an expert witness.

14 Expert testimony on prevailing professional norms is not

15 necessary nor is it helpful to the Court.  _See_ _Earp v._

16 _Cullen_, 623 F.3d 1065, 1075 (9th Cir. 2010) ("Expert

17 testimony is not necessary to determine claims of

18 ineffective assistance of counsel ... [b]ecause a

19 district court is qualified to understand the legal

20 analysis required by _Strickland_ ... ." (internal

21 quotations and citations omitted)).  Moreover, Petitioner

22 offers no evidence or argument regarding what the expert

23 could testify to that would be of assistance to the

24 Court.  Accordingly, the Court denies his request for

25

26 _____

   [7]    By making this argument, Petitioner apparently
27 concedes that his claim for ineffective assistance due to
   his counsel's failure to investigate is without
28 evidentiary support, as discussed _supra_.

1  leave to supplement the record with an expert affidavit.

2

3       Finally, the Court finds Petitioner fails to make the

4  necessary showing to substantiate his request for an

5  evidentiary hearing.  He argues such a hearing is

6  necessary to resolve "disputed issues of fact."  (Reply

7  at 2.)  Petitioner fails to demonstrate any material

8  facts that are disputed between the parties and which

9  need to be resolved at an evidentiary hearing.  The facts

10 in this case are undisputed, as they are evidenced by the

11 Reporters' Transcripts of the proceedings below.  The

12 parties have argued differing interpretations of the

13 testimony heard during the trial in this matter, but

14 neither can dispute the actual testimony given by the

15 witnesses or the veracity of the record.  Accordingly,

16 the Court finds no basis for holding an evidentiary

17 hearing and denies Petitioner's request.

18

19 **C.   Certificate of Appealability**

20      The Government argues the Court should not issue a

21 Certificate of Appealability ("COA") in this case.

22 (Opp'n at 25.)

23

24      Rule 11(a), Rules Governing Section 2255 Cases,

25 requires that in habeas cases the "district court must

26 issue or deny a certificate of appealability when it

27 enters a final order adverse to the applicant."  Such

28

1   certificates are required in cases concerning detention
2   arising "out of process issued by a State court," or in a
3   proceeding under 28 U.S.C. § 2255 attacking a federal
4   criminal judgment or sentence.   28 U.S.C. § 2253(c)(1).
5   The standard for issuing a COA is whether the applicant
6   has "made a substantial showing of the denial of a
7   constitutional right."   28 U.S.C. § 2253(c)(2).   "Where a
8   district court has rejected the constitutional claims on
9   the merits, the showing required to satisfy § 2253(c) is
10  straightforward: [t]he petitioner must demonstrate that
11  reasonable jurists would find the district court's
12  assessment of the constitutional claims debatable or
13  wrong."   Slack v. McDaniel, 529 U.S. 473, 484 (2000).
14  "When the district court denies a habeas petition on
15  procedural grounds without reaching the prisoner's
16  underlying constitutional claim, a COA should issue when
17  the prisoner shows, at least, that jurists of reason
18  would find it debatable whether the petition states a
19  valid claim of the denial of a constitutional right and
20  that jurists of reason would find it debatable whether
21  the district court was correct in its procedural ruling."
22  Id.
23
24      Here, as the Court has "rejected [Petitioner's]
25  constitutional claims on the merits" and Petitioner has
26  not shown that "reasonable jurists would find [the
27  Court's] assessment of the constitutional claims
28

1  debatable or wrong," the Court denies a COA in this case.

2  <u>Slack v. McDaniel</u>, 529 U.S. at 484; <u>see</u> <u>Muth v. Fondren</u>,

3  676 F.3d 815, 822 (9th Cir. 2012) (amended) (denying COA

4  when petitioner failed to make "a substantial showing of

5  the denial of a constitutional right....").

6

7                          **IV. CONCLUSION**

8       For the foregoing reasons, the Court DENIES

9  Petitioner's § 2255 Motion, and dismisses this action

10  with prejudice.

11

12

13  Dated: June 3, 2013                    _____

14                                          VIRGINIA A. PHILLIPS
                                          United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28